## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ZEBA KHADEM,<br><br>       *Plaintiff*,<br><br>   v.<br><br>BROADCASTING BOARD OF<br>GOVERNORS,<br><br>       *Defendant.* | Civil Action No. 18-1327 (RDM) |

## <u>MEMORANDUM OPINION</u>

This matter is before the Court on Defendant's motion to dismiss Plaintiff's amended complaint. Dkt. 24. Plaintiff Zeba Khadem alleges that her employer, the Broadcasting Board of Governors ("the Board"), discriminated against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.* Dkt. 21 at 5–6 (Am. Compl. ¶¶ 16–23). Plaintiff also claims that the Board retaliated against her and subjected her to a hostile work environment in violation of the ADEA. *Id.* at 6–8 (Am. Compl. ¶¶ 24–29). The Court previously granted summary judgment on certain of Plaintiff's claims and dismissed the others, allowing Plaintiff to file an amended complaint to correct deficiencies in her original complaint. Minute Order (Aug. 16, 2019). Plaintiff filed an amended complaint, Dkt. 21, but it contains few discernable changes from her original complaint, Dkt. 1.

At the outset, the Court notes that the factual and legal issues presented in this case are virtually identical to those in *Shah v. Broadcasting Board of Governors*, 18-cv-1328: indeed, the operative complaints in each case barely differ. However, because *Shah* and this matter were

brought separately, the Court will issue an opinion in each case, with this opinion mirroring in substantial part the opinion that the Court issued in *Shah*.

As explained below, given Plaintiff's failure to cure the deficiencies in her original complaint when she filed her amended complaint, and in light of Plaintiff's failure adequately to plead her claims in any event, the Court will **GRANT** the Board's motion to dismiss, Dkt. 24.

## I.    BACKGROUND

The Court, as it must, accepts Plaintiff's factual allegations as true for purposes of evaluating the Board's motion to dismiss.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

## A.    Factual Background

Plaintiff Zeba Khadem is a naturalized United States citizen of Afghan national origin. Dkt. 21 at 3 (Am. Compl. ¶ 5).  For thirty-four years, until her retirement in 2017, Khadem worked as an International Broadcaster for the Pashto Service, a division of Voice of America ("VOA").  Dkt. 21 at 3, 4 (Am. Compl. ¶¶ 6–7, 11).  The Board—now called the U.S. Agency for Global Media—is the federal agency that oversees the VOA.  According to the operative complaint, Khadem was compensated at General Schedule pay scale ("GS") level 12, and her duties included editing, transcribing, and translating various materials that VOA would broadcast by radio.  *Id.* at 3–4 (Compl. ¶¶ 6, 8).  As an International Broadcaster, Khadem was required to be fluent in both Farsi and Pashto—two languages that are commonly spoken in Afghanistan. *Id.* at 4 (Compl. ¶ 8)*.*

In 2014, Plaintiff filed suit against the Board for discrimination on the basis of national origin in violation of Title VII and on the basis of age in violation of the ADEA.  *Achagzai v. Broad. Bd. of Governors*, 170 F. Supp. 3d 164 (D.D.C. 2016) ("*Achagzai I*").  The suit was one of many brought by the same counsel on behalf of international broadcasters at the VOA alleging

similar episodes of discrimination.[1]  In that suit, Plaintiff and four others alleged "37 categories of discriminatory conduct," including "a barrage of insults and insulting behavior aimed toward Plaintiffs," "frequent downgrades in assignments," several "change[s] [to] their schedules." *Achagzai I*, 170 F. Supp. 3d at 169.  They further alleged that they were retaliated against when they voiced their concerns.  *Id.*  This Court dismissed all of Plaintiff's claims in that matter because she had not exhausted her administrative remedies.  *Id.* at 176, 178.

Plaintiff filed this case in June 2018, raising a similar array of allegations—many vague—about the Board's allegedly discriminatory and retaliatory actions.  *See generally* Dkt. 1 (Compl.).  Most saliently, Plaintiff alleges that the Board altered her job responsibilities by: (1) requiring her to work with several forms of multimedia, instead of the radio translations to which she was accustomed; and (2) requiring her to conduct "translations not [only] from English to Pashto" as she had previously done, "but also from Pashto to English."  Dkt. 21 at 4 (Am. Compl. ¶ 14).  Completing these new responsibilities, Plaintiff alleges, was possible "only [for] the newly trained and younger staff."  *Id.*  The senior staff, in turn, were left "to either retire or be fired for failing to complete assignments."  *Id.* at 5 (Am. Compl. ¶ 14).

Plaintiff complained to management about these changes.  *Id.* at 4 (Am. Compl. ¶ 12). But when she did, "management became more hostile towards her," "marginaliz[ed] her in meetings[] with co-workers, and on air shows and . . . opportunities during the day to day assignments."  *Id.*  Meanwhile, "[y]ounger employees were given shows and on[-]air interviews and assignments that were not available to the senior staff and in particular to [Plaintiff]."  *Id.* at

---

[1]  *See Achagzai v. Broad. Bd. of Governors*, 109 F. Supp. 3d 67 (D.D.C. 2015) ("*Achagzai II*"); *see also Stanazai v. Broad. Bd. of Governors,* No. 17-2653, 2019 WL 1046296 (D.D.C. Mar. 5, 2019); *Mohmand v. Broad. Bd. of Governors*, No. 17-618, 2018 WL 4705800 (D.D.C. Sept. 30, 2018); *Khadem v. Broad. Bd. of Governors*, No. 18-1327 (D.D.C. filed June 4, 2018).

6 (Am. Compl. ¶ 20).  Making matters worse, according to Plaintiff, during the subsequent June

2017 "benchmarking" period, "management failed to give [her] steps" to gain a promotion to the

GS-13 level, even though "less deserving but younger colleagues [received] promot[ions] based

on the benchmarking."  *Id.* at 5 (Am. Compl. ¶ 15).

    In sum, then, Plaintiff alleges that changes to her work responsibilities hindered her

performance, *id.* at 6 (Am. Compl. ¶ 20); that those changes were made in retaliation for her

prior suit against the Board or based on discriminatory animus against older employees, *id.* at 4,

6 (Am. Compl. ¶¶ 9, 20–21); and that the Board's failure to promote her was both retaliatory and

discriminatory, *id.* at 4 (Am. Compl. ¶ 15).

## B.    Procedural Background

    On March 20, 2017, Plaintiff initiated contact with an EEO counselor.  Dkt. 14-3 at 1

(EEO Compl.); *see also* Dkt. 31-1 at 21 (EEO Intake Sheet).  In her EEO complaint, Plaintiff

alleged that the Board retaliated against her for engaging in protected EEO activity and

discriminated against her based on her age and, in particular, that the Board's imposition of the

new work responsibilities and improper benchmarking were the products of retaliatory and

discriminatory animus.  Dkt. 14-3 at 1 (EEO Compl.).  Roughly fourteen-and-a-half months

later, on June 4, 2018, Plaintiff filed the instant suit.  Dkt. 1.

    Plaintiff's initial complaint contained three counts: (1) discrimination based on age in

violation of Title VII, *id.* at 5 (Compl. ¶¶ 16–18); (2) discrimination based on age in violation of

the ADEA, *id.* at 5–6 (Compl. ¶¶ 19–23); and (3) retaliation in violation of the ADEA, *id.* at 6–8

(Compl. ¶¶ 24–29).  Plaintiff also made passing references to a hostile work environment,

alleging that "[t]she hostile working environment was sufficiently severe and/or pervasive to

alter the conditions of employment for Plaintiff and to create an abusive working environment."
*Id.* at 8 (Compl. ¶ 29).[2]

Defendants moved to dismiss, or in the alternative, for summary judgment. Dkt. 14.
They argued that Plaintiff (1) failed to exhaust her administrative remedies with respect to her
claims related to her modified work responsibilities, Dkt. 14-1 at 8–9; (2) failed to state a claim
for age discrimination under Title VII because age is not a protected class under Title VII, *id.* at
5–6; and (3) failed to state a claim for discrimination, retaliation, or a hostile work environment
under the ADEA, *id.* at 6–13.  Plaintiff opposed the motion.  Dkt. 16.  After a brief stay in the
action, *see* Minute Order (Jan. 10, 2019), Defendants filed their reply to Plaintiff's opposition,
Dkt. 20, after which the Court ordered parties to appear for oral argument, *see* Minute Order
(Aug. 9, 2019).

Oral argument took place on August 15, 2019.  At the argument, the Court first dismissed
Plaintiff's Title VII, age-discrimination claim:

> THE COURT:  . . .  So let me start with the Title VII claims.  The Government
> states, I think quite correctly, that there's no claim for age discrimination under
> Title VII.  I guess the question I just had for the plaintiffs is[:] is there any
> disagreement with that or should I dismiss the Title VII claims?
>
> MS. SHAH:  Your Honor, one of the bases for them being targeted is under Title
> VII for—based on their age.
>
> THE COURT:  But age isn't a classification under Title VII.  It is under the Age
> Discrimination Act, but not under Title VII.
>
> MS. SHAH:  The ADEA, yes, I understand.  So Title VII, yes, your Honor, you
> could.

---

[2]  Plaintiff's original complaint named the Board and Jeffrey Shell, the Board's then-Chairman,
as Defendants. Dkt. 1 at 1 (Compl.)  That complaint raised no allegations as to Shell
specifically, *id.*, and the amended complaint dropped Shell as a defendant, Dkt. 21 at 1 (Am.
Compl.).

THE COURT:  So I will dismiss, then, the Title VII claims.

MS. SHAH:  Okay.

Dkt. 23 at 3:20–4:11 (Tr. of Oral Arg.).

The Court then turned to Defendants' motion for summary judgment.  It concluded that Plaintiff failed to exhaust her administrative remedies with respect to her claim premised on the change in her work responsibilities that occurred in May 2018,[3] and, thus, the Court granted summary judgment in Defendants' favor on that claim.  *Id.* at 4:12–9:7 (Tr. of Oral Arg.); *see also id.* 36:16–20 (Tr. of Oral Arg.).  But the same conclusion did not follow, the Court explained, for Plaintiff's claim premised on the change in her work responsibilities that occurred in February 2017; as to that claim, the record before the Court lacked sufficient detail to permit it to determine whether Plaintiff had exhausted her administrative remedies.  *Id.* at 21:9–22:4 (Tr. of Oral Arg.).  The Court, accordingly, encouraged the parties to confer to discern when EEO counseling was initiated and permitted Defendants to re-assert their objection to the February 2017 position's non-exhaustion, if doing so was supported by the facts.  *Id.* at 22:5–12 (Tr. of Oral Arg.).

Subsequent to that exchange, Defendants urged the Court—"independent of the exhaustion issue"—to dismiss Plaintiff's discrimination claim premised on the February 2017 changes to her job responsibilities.  *Id.* at 23:10–11 (Tr. of Oral Arg.).  In response, the Court inquired of Plaintiff's counsel:  "What was the change in the position [that] you think . . . constitutes an adverse employment action?"  *Id.* at 23:12–14 (Tr. of Oral Arg.).  An extended

---

[3]  In Plaintiff's original complaint, she alleged that her work responsibilities had been unlawfully changed twice—once in February 2017 and again in May 2018.  Dkt. 1 at 4 (Compl. ¶ 10).  Plaintiff's amended complaint makes no mention of the May 2018 incident.  Dkt. 21 at 4 (Am. Compl. ¶ 11).

colloquy ensued, with the Court informing Plaintiff's counsel that "it's not the case that any change is actionable." *Id.* at 25:2–5 (Tr. of Oral Arg.). Plaintiff's counsel responded that requiring Plaintiff to translate from Pashto to English, in addition to translating from English to Pashto, constituted sufficient grounds for an ADEA discrimination or retaliation claim because it was a "completely" different task, akin to "driving your car to work and then flying back home." *Id.* at 29:3–4 (Tr. of Oral Arg.). The Court was unpersuaded and concluded that:

> [T]he Government makes a fair point . . . . [Y]ou do have to allege that there was either [1] a change in the terms and conditions of employment with respect to a discrimination claim or [2] [a] change [that] was sufficiently severe that it's the type of change that would discourage somebody from bringing a discrimination claim for purposes of the retaliation claim.

*Id.* at 33:1–8 (Tr. of Oral Arg.). Because Plaintiff had failed to do so, the Court dismissed Plaintiff's claim relating to the February 2017 change in her responsibilities. *Id.* at 38:16–20 (Tr. Of Oral Arg.). The Court did, however, offer Plaintiff "a chance to refile something" that clarified the adverse employment action that she suffered. *Id.* at 33:21–22 (Tr. of Oral Arg.).

Finally, the Court considered Plaintiff's claim that the GS-13 benchmarking process was infected with retaliatory or discriminatory animus, asking Plaintiff's counsel to point to "where in the complaint it allege[d] facts that [were] more than just the legal conclusion that there was discrimination." *Id.* at 35:2–3 (Tr. of Oral Arg.). After Plaintiff's counsel attempted to do so, the Court concluded: "with respect to the GS-13 benchmarking, I think you need to, in any event, allege more and [to] provide more detail in your complaint about what [1] the adverse employment action is or [2] the retaliatory action is." *Id.* at 37:20–23 (Tr. of Oral Arg.).

The Court summarized the results of the hearing as follows:

> [W]hat I'm going to do is grant summary judgment on exhaustion with respect to the 2018 [job-responsibility change], grant the motion to dismiss with respect to Title VII. And with respect to the remainder of the complaint, I'm going to

dismiss it for failure to state a claim, both under Rule 8 and Rule 12(b), because
I just don't think you've adequately articulated what your claim is in the case.

*Id.* at 38:13–38:20 (Tr. of Oral Arg.)

Plaintiff filed an amended complaint on August 30, 2019.  Dkt. 21.  But little changed:
Plaintiff made a series of small formatting changes, omitted the allegations relating to the May
2018 position description, and removed an allegation relating to a different plaintiff in a different
case.  *Id.* at 4 (Am. Compl. ¶ 11); *see also* Dkt. 31-1 at 7, 12 (Am. Compl. ¶¶ 11, 23 Redline).
Plaintiff also attached to the amended complaint an email and "EEO Counseling Initial Intake
Sheet" purporting to show that she initiated the EEO counseling process on March 20, 2017 and
that she therefore timely exhausted her administrative remedies with respect to the February
2017 position-description change.  Dkt. 31-1 at 21 (EEO Intake Sheet); *see also* Dkt. 14-3 at 1
(EEO Compl.).

The Board once again moves to dismiss, arguing that Plaintiff has failed to state (1) a
Title VII claim for age discrimination, as "age is not a protected classification under Title VII,"
Dkt. 24-1 at 7; (2) a retaliation claim under the ADEA because she has not adequately alleged
causation, *id.* at 10–11; (3) a claim for discrimination under the ADEA, *id.* at 11–15; or (4) a
claim for a hostile work environment under the ADEA, *id.* at 15–16.

## II.  LEGAL STANDARD

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal
sufficiency of the allegations contained in the complaint.  A complaint must contain "'a short and
plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the
defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl.*
*Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957));
*see also* Fed. R. Civ. P. 8(a).  Although "detailed factual allegations" are not necessary to

withstand a Rule 12(b)(6) motion to dismiss, a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* Instead, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted). If the complaint's allegations fail to meet this standard, the court must dismiss the action. *Id.*

### III.   ANALYSIS

The Board argues that Plaintiff's claims should be dismissed for two overarching reasons. First, it contends that Plaintiff "failed to change her original Complaint in any meaningful way to cure the deficiencies that this Court identified [at the August 15, 2019 oral argument]." Dkt. 24-1 at 5. Second, the Board argues that Plaintiff's claims fail on their merits irrespective of the Court's prior decision as to the adequacy of Plaintiff's initial complaint. Dkt. 24 at 1. The Court will address each argument in turn.

### A.   Failure to Correct Prior Deficiencies

To protect judicial economy, preserve orderly litigation, and promote uniformity in their decisions, courts generally abide by the "law-of-the-case doctrine." *Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735, 739–40 (D.C. Cir. 1995). Under the doctrine, "a 'legal decision made at one stage of litigation . . . becomes the law of the case for future stages of the same litigation.'" *Kimberlin v. Quinlan*, 199 F.3d 496, 500 (D.C. Cir. 1999) (quoting *Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.*, 810 F.2d 243, 250 (D.C. Cir. 1987)). Courts, therefore, typically refrain from "re-open[ing] questions already decided," *Simon v. Republic of Hungary*, 443 F. Supp. 3d 88, 111 (D.D.C. 2020) (quotation marks omitted), unless "there is an intervening change in the law or if the previous decision was clearly erroneous and would work a

manifest injustice," *Kimberlin*, 199 F.3d at 500 (quotation marks omitted).  Proceeding in this manner helps avoid inconsistency and stems from the sensible intuition that "the *same* issue presented a second time in the *same case* in the *same court* should lead to the *same result*." *LaShawn A. v. Barry*, 87 F.3d 1389, 1393 (D.C. Cir. 1996) (en banc).

The doctrine is not without its exceptions, however, and one important exception applies here: "[i]nterlocutory orders are not subject to the law of the case doctrine and may always be reconsidered prior to final judgment."  *Langevine v. District of Columbia*, 106 F.3d 1018, 1023 (D.C. Cir. 1997); *see also Filebark v. U.S. Dep't of Transp.*, 555 F.3d 1009, 1013 (D.C. Cir. 2009); *Sloan v. Urban Title Servs., Inc.*, 770 F. Supp. 2d 216, 224 (D.D.C. 2011).  That is because, under the Federal Rules of Civil Procedure, "orders entered by a district court 'may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.'"  *Pub. Citizen, Inc. v. Trump*, 361 F. Supp. 3d 60, 76 (D.D.C. 2019) (quoting Fed. R. Civ. Pro. 54(b)).  Revisions to interlocutory orders, accordingly, should issue "as justice requires," *Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*, 630 F.3d 217, 227 (D.C. Cir. 2011) (quotation marks omitted), although courts must nevertheless remain mindful that "principles of judicial efficiency and expedition counsel against revisiting prior rulings absent good ca[u]se," *Pub. Citizen*, 361 F. Supp. 3d at 76.

In this case, the Court initially dismissed or granted summary judgment in Defendants' favor on all of Plaintiff's claims at the August 15, 2019 oral argument.  Dkt. 23 at 38:13–38:20 (Tr. of Oral Arg.).  That decision was interlocutory—the Court did not enter final judgment and, indeed, invited Plaintiff to file an amended complaint.  *See Ciralsky v. CIA*, 355 F.3d 661, 666 (D.C. Cir. 2004) ("[T]he dismissal without prejudice of a complaint [i]s not final . . . because the plaintiff is free to amend [her] pleading and continue the litigation." (emphasis omitted)

(quotation marks omitted)); *Alaska v. FERC*, 980 F.2d 761, 764 (D.C. Cir. 1992) ("In the civil context, grants of partial summary judgment are generally considered interlocutory orders, not subject to immediate review.").

Plaintiff accepted that invitation and roughly two weeks after oral argument filed an amended complaint, Dkt. 21, which the Board asks the Court to dismiss for failure to state a claim, Dkt. 24.  The Board argues, in part, that Plaintiff's failure to cure—or even to attempt to cure—the deficiencies in the original complaint warrants dismissal.  *See, e.g.*, Dkt. 24-1 at 4 ("[Plaintiff] failed to change her original Complaint in any meaningful way to cure the deficiencies that this Court identified.  Accordingly, the substance of her claims remains unchanged and this Court should dismiss them again—this time with prejudice.").  In other words, because both complaints raised the same asserted deficiencies, both complaints should meet the same fate.  *Id.*  The question, therefore, is whether, given the interlocutory nature of the Court's decision at oral argument, either "justice," *Capitol Sprinkler*, 630 F.3d at 227, or "good ca[u]se" requires treating the amended complaint differently from the original, *Pub. Citizen*, 361 F. Supp. 3d at 76.

Neither do.  The amended complaint, Dkt. 21, tracks the original complaint in all material respects, Dkt. 1.  It contains only four changes that are not related to the formatting of the document: (1) Plaintiff, by removing the five words "and again in May 2018," has eliminated the 2018 position description change as a basis for her ADEA claims, Dkt. 31-1 at 7 (Am. Compl. ¶ 11, Redline); (2) Plaintiff vaguely alleges that her "duty was changed" and her "job was put into danger of termination because of th[os]e changes," *id.*; (3) Plaintiff removed an allegation pertaining to a different plaintiff in a different suit against the Board, *id.* at 12 (Am. Compl. ¶ 23, Redline); and (4) Plaintiff no longer names the Board's then-Chairman as a defendant, *id.* at 1

(Am. Compl. Redline).  These deletions neither bear on why the Court rejected Plaintiff's claims

the first time around—their legal insufficiency—nor do they alter the legal theories or issues at

stake.  Plaintiff offers no explanation how the amended complaint cures any of the deficiencies

that prompted the Court to dismiss the original complaint, and she fails to point to any error that

the Court committed or change in the law that might support revisiting the questions the Court

previously decided.  There is, in other words, no "good ca[u]se" to revisit the Court's prior

decision rejecting Plaintiff's claims.  *Pub. Citizen*, 361 F. Supp. 3d at 76.  "[J]ustice" does not

"require[]" a different result either.  *Capitol Sprinkler*, 630 F.3d at 227.

Given the extensive overlap between Plaintiff's original and amended complaints, and in

view of the equitable considerations discussed above, the Court concludes that each claim in

Plaintiff's amended complaint should be dismissed here, just as each was originally dismissed.

## A.  Pleading Failures

Even if the legal sufficiency of Plaintiff's claims merited reconsideration, they would still

fail under Rules 8 and 12(b)(6).  The Court addresses each claim in turn.

### 1.  *Title VII*

Count One of the amended complaint avers that "Plaintiff is an employee within the

meaning of Title VII and belongs to classes protected under the statute; namely age."  Dkt. 21 at

5 (Am. Compl. ¶ 16).  But, as the Court previously explained at the August 15, 2019 hearing, age

is not an actionable classification for purposes of Title VII.  Dkt. 23 at 4:4–5 (Tr. of Oral Arg.);

*see also Mohmand v. Broad. Bd. of Governors*, 2018 WL 4705800, at *3 (D.D.C. Sept. 30, 2018)

("Title VII prohibits discrimination based on an individual's 'race, color, religion, sex, or

national origin,' but not based on an individual's age.") (quoting 42 U.S.C. § 2000(e)-2(a)).  The

Court will, accordingly, dismiss Count One of Plaintiff's amended complaint for failure to state a claim: age discrimination is simply not cognizable under Title VII.

2. *ADEA Age Discrimination*

Count Two of the amended complaint alleges that the Board discriminated against Plaintiff based on her age in violation of the ADEA.  Dkt. 21 at 5–6 (Am. Compl. ¶¶ 19–23). The ADEA requires that "[a]ll personnel actions affecting [federal] employees or applicants for employment who are at least 40 years of age . . . shall be made free from any discrimination based on age."  29 U.S.C. § 633a(a).  There are accordingly two elements to an ADEA discrimination claim: the plaintiff must allege "(1) that [she] 'suffered an adverse employment action' and (2) that [her] employer took that action 'because of' [her] age."  *Sagar v. Mnuchin*, 305 F. Supp. 3d 99, 108 (D.D.C. 2018) (quoting *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 493 (D.C. Cir. 2008)) (subsequent history omitted); *see also Blackwell v. SecTek, Inc.*, 61 F. Supp. 3d 149, 161 (D.D.C. 2014).

Plaintiff's age discrimination claim is premised on the following allegations: (1) "[y]ounger employees were given shows[,] on air interviews[,] and assignments that were not available to the senior staff and in particular to [Plaintiff]," Dkt. 21 at 6 (Am. Compl. ¶ 20); (2) the Board "required that younger employees replace the senior staff," *id.* (Am. Compl. ¶ 21); (3) "management harassed and targeted the senior staff, including plaintiff[,] to force them to either leave their positons [sic] or be terminated," *id.* (Am. Compl. ¶ 22); (4) "management failed to . . . [promote Plaintiff] to become GS 13 . . . [while] less deserving but younger colleagues were promoted," *id.* at 5 (Am. Compl. ¶ 15); and (5) the Board made Plaintiff's work responsibilities more difficult and thus "forc[ed] her into constructive retirement," by (i) changing the form of media on which Plaintiff was required to work from radio to television;

and (ii) requiring Plaintiff to translate from Pashto to English, in addition to translating from English to Pashto, *id.* (Am. Compl. ¶¶ 11–14).

The Board contends that these allegations fail to state an ADEA discrimination claim because they (1) "lack specificity;" and (2) "do not rise to the level of an adverse employment action." Dkt. 24-1 at 13 (quotation marks omitted). The Board further asserts that, to the extent Plaintiff argues that her non-promotion to GS-13 through the benchmarking process constitutes actionable discrimination on behalf of the Board, she "fails in two ways to plead a prima facie case:" (1) "she does not identify any employee of similar qualifications that was promoted while she [was] not;" and (2) she "fails the qualifications prong of the prima facie test by vaguely alleging only that on air talent requires that her position be elevated to GS-13." *Id.* at 12 (quotation marks omitted).

At the outset, the Court notes that the Board is mistaken in faulting Plaintiff for failing to plead a prima facie case. *Id.* To survive a motion to dismiss, "'the plaintiff [need] not plead the elements of a prima facie case.'" *Brown v. Sessoms*, 774 F.3d 1016, 1023 (D.C. Cir. 2014) (quoting *Brady*, 520 F.3d at 493); *see also Montgomery v. Omnisec Int'l Sec. Servs., Inc.*, 961 F. Supp. 2d 178, 183 (D.D.C. 2013) ("In employment discrimination cases involving ADEA or Title VII claims, a plaintiff need not plead facts establishing a prima facie case."). That is because "[t]he prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002). At this juncture, consequently, "the 'only question before [the Court] is whether [the plaintiff has] alleged facts that, taken as true, render h[er] claim of [discrimination] plausible.'" *McManus v. Kelly*, 246 F. Supp. 3d 103, 112 (D.D.C. 2017) (quoting *Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 70 (D.C. Cir. 2015). That test is not "an 'onerous' one," to be sure. *Id.* at 111

(quoting *Nanko Shipping, USA v. Alcoa, Inc.*, 850 F.3d 461, 466–67 (D.C. Cir. 2017)).  But, for the following reasons, the Court concludes that Plaintiff has still failed to meet it.

To start, Plaintiff fails to allege an adverse employment action, one of the two "essential elements of a discrimination claim under the ADEA."  *Mohmand*, 2018 WL 4705800, at *4 (quotation marks omitted).  An adverse employment action in the context of an ADEA discrimination claim requires alleging "'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.'"  *Achagzai I*, 170 F. Supp. at 181 (quoting *Douglas v. Donovan*, 559 F.3d 549, 552 (D.C. Cir. 2009)).  But "'not everything that makes an employee unhappy is an actionable adverse action.'"  *Achagzai v. Broad. Bd. of Governors*, 2020 WL 5530135, at *5 (D.D.C. Sept. 14, 2020) (quoting *Russell v. Principi*, 257 F.3d 815, 818 (D.C. Cir. 2001).  "'Employer actions regarding assignments or duties that are temporary in nature and not accompanied by economic consequences,' for example, 'are rarely cognizably adverse.'"  *Id.* (quoting *Achagzai v. Broad. Bd. of Governors*, 308 F. Supp. 3d 396, 409 (D.D.C. 2018).  "Similarly, '[p]urely subjective injuries, such as dissatisfaction with a reassignment, are not adverse actions' either."  *Id.* (quoting *Bolden v. Clinton*, 847 F. Supp. 2d 28, 40 (D.D.C. 2012); *see also Holcomb v. Powell*, 433 F.3d 889, 902 (D.C. Cir. 2006).  Rather, "[t]o survive a motion to dismiss, the allegations contained in the complaint must be sufficient to allow a reasonable trier of fact to find an objective, tangible harm."  *Mohmand*, 2018 WL 4705800, at *4.

Plaintiff's complaint fails to satisfy this test: even when viewed in the light most favorable to Plaintiff, the amended complaint fails "plausibl[y]" to allege that she suffered an adverse employment action.  *McManus*, 246 F. Supp. 3d at 112.  Plaintiff claims that (1) the

Board "required that younger employees replace the senior staff;" (2) "management harassed and targeted the senior staff, including plaintiff to force them to either leave their positons [sic] or be terminated;" (3) "[y]ounger employees were given shows[,] on air interviews[,] and assignments that were not available to the senior staff and in particular to [Plaintiff];" (4) Plaintiff's "duty was changed when" her job responsibilities were modified; and (5) Plaintiff's "job was put into danger of termination because of th[os]e changes" to her work responsibilities.  Dkt. 21 at 4, 6 (Am. Compl. ¶¶ 11, 20–22).  These statements, however, are too vague and conclusory to sustain a discrimination claim.  Plaintiff does not allege even one instance of harassment; one concrete opportunity she was denied; or one cognizable change in the terms and conditions of her employment.  Although "facts in a complaint need not be detailed . . . [,] 'more than an unadorned, the-defendant-harmed-me accusation'" is required.  *Frost v. Cath. Univ. of Am.*, 960 F. Supp. 2d 226, 230 (D.D.C. 2013), *aff'd*, 555 F. App'x 6 (D.C. Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).  Those adornments are missing here.  *Cf. Mohmand*, 2018 WL 4705800, at *5 ("Mohmand alleges that the Board favored younger, less experienced staff by giving them [] plum assignments . . . and relegating him to production because of his age. . . .  These allegations, however, lack specificity and, as alleged, do not rise to the level of an adverse employment action." (citation and quotation marks omitted)).

Plaintiff's claim that the Board made her work responsibilities more difficult suffers from a similar flaw.  Plaintiff does not explain how the change in her translation responsibilities affected the terms or conditions of her employment, Dkt. 21 at 4–5 (Am. Compl. ¶¶ 11–14)), even though she was asked at oral argument to do just that, Dkt. 23 at 24:15–30:3.  And the little that can be inferred from the amended complaint—for instance, that Plaintiff found her new assignments hard "to complete," Dkt. 21 at 5 (Am. Compl. ¶ 14)—fall short of what is required

16

to allege an adverse action based on increased workload.  *See Mogenhan v. Napolitano*, 613 F.3d
1162, 1166 (D.C. Cir. 2010) (finding material adverse action where defendant "increased
[plaintiff's] workload to *five to six times* that of other employees" (emphasis added)).
Consequently, the facts alleged in Plaintiff's complaint (separate from those related to the
benchmarking process) are insufficient to state an adverse action cognizable under the ADEA.
*See McManus*, 246 F. Supp. 3d at 112.

Plaintiff's allegations with respect to her non-promotion during the benchmarking
process also fail.  Although a refusal to promote qualifies as a materially adverse action, *see
Taylor v. Solis*, 571 F.3d 1313, 1321 (D.C. Cir. 2009), Plaintiff fails adequately to allege that her
non-promotion was "because of" her age, *Brady*, 520 F.3d at 493.  To the contrary, Plaintiff's
sole allegation related to the benchmarking process is that she was "an on[-]air talent," which
"require[d]" that the Board promote her.  Dkt. 21 at 5 (Am. Compl. ¶ 15).  But not only is that
isolated allegation unexplained and insufficient to satisfy Rule 8, Plaintiff's benchmarking claim
fails for a second reason as well—the amended complaint does not plausibly allege that
Plaintiff's non-promotion was because of her age.

When the Court inquired of Plaintiff's counsel at oral argument what Plaintiff's "on-air"
benchmarking allegation meant, the answer was similarly unilluminating:

> THE COURT:  What does this mean, "Although [Plaintiff] is an on[-]air talent,
> management failed to give [her] steps to become a GS-13"?  What does that
> mean?
>
> MS. SHAH:  So in order to become GS-13, you have to go through the
> requirements to then be able to qualify for GS-13.  And when they came to do
> the benchmarking – and this was an evaluation of I suppose all the employees
> there, certain other employees were given the opportunity – were bumped up to
> GS-13 while the seniors, the ones who had complained, none of them were.  And
> they had all – were trained and had done the jobs of GS-13.  And one example
> is on[-]air talent being GS-13.  The other one is being an editor in the evening
> shift, that's GS-13, editing other's [sic] work and all the different tasks.

> THE COURT:  Just to make sure I understand this, what you're saying here and what you're intending to allege is that there are certain tasks one needs to perform as a GS-12 for some period of time to then qualify to be considered for a GS-13, is that right?
>
> MS. SHAH:  That's part of it.  The other part of it is the reason the benchmarking happened was because at this agency, in the language services, there were even contractors, POVs, who were doing managerial position's jobs and they were getting paid far less.  And I think there was a class action.  So the benchmarking was sort of a side – I believe a side kind of management evaluation of all the different positions and all the different employees who were doing different tasks, and what pay rate would they be qualified for.

Dkt. 23 at 35:12–36:15 (Tr. of Oral Arg.).  Even with this explanation, the nature of Plaintiff's benchmarking claim remains elusive.  But, more importantly for present purposes, given the opportunity to file an amended complaint addressing this confusion, Plaintiff added nothing to her initial, insufficient allegations.  The Court is, as a result, in the same position as it was before: it can only guess how Plaintiff contends she was wronged, and cannot "draw the reasonable inference" from Plaintiff's allegations "that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Rules 8 and 12(b)(6) demand more.

For the foregoing reasons, the Court will dismiss Plaintiff's ADEA discrimination claim.

3. *ADEA Retaliation*

In Count Three of the amended complaint, Plaintiff alleges that the Board unlawfully retaliated against her by subjecting her to the employment actions described above.  Dkt. 21 at 6–7 (Am. Compl. ¶¶ 24–26).  The ADEA makes it "unlawful for an employer to discriminate against any of [its] employees . . . because such individual . . . has opposed any practice made unlawful by this section, or because such individual . . . has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation" relating to age discrimination.  29 U.S.C. § 623(d).  "To prevail on a claim of unlawful retaliation under the

ADEA, a plaintiff must show that (1) [she] engaged in activity protected by the ADEA; (2) [she] suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse action." *Mohmand*, 2018 WL 4705800, at *5. "A complaint will survive a motion to dismiss if it 'allege[s] sufficient facts on each of the[se] . . . elements.'" *McManus*, 246 F. Supp. 3d at 113 (quoting *Harris*, 791 F.3d at 69).

The Court concludes that Plaintiff's retaliation claim is inadequately pled. Plaintiff has failed to allege "a causal connection between [her] protected activity and the adverse action" she allegedly suffered. *Achgzai I*, 170 F. Supp. 3d at 185. The amended complaint alleges one event that could be construed as protected activity (although the amended complaint does not label it—or any other event—as such): "Plaintiff and her colleagues had filed a complaint in 2013 based on age discrimination, reprisal and harassment," Dkt. 21 at 4 (Am. Compl. ¶ 9);[4] *see also* Dkt. 26-1 at 5 ("Plaintiff engaged in protected activity. She was one party to a claim against the agency, in the case of [*Achgzai* I]."); *id.* at 8 ("[Plaintiff] engaged in protected activity when she . . . subsequently filed a federal claim[] against her employer for discrimination based on her age."). The adverse actions that Plaintiff alleges, however—that is, the February 2017 changes to her work responsibilities and the subsequent denial of a promotion to the GS-13 level—came years after her protected activity in 2014.

"Although judges in this circuit are of different minds about what facts a plaintiff must plead to allege a causal connection in support of a retaliation claim," *Mohmand*, 2018 WL 4705800, at *5 (citing *Menoken v. McGettigan*, 273 F. Supp. 3d 188 (D.D.C. 2017)), the D.C. Circuit has made clear that when a plaintiff relies only on temporal proximity to establish

---

[4] Although the amended complaint avers that "Plaintiff and her colleagues had filed a complaint in 2013," Dkt. 21 at 3 (Am. Compl. ¶ 8), the suit in question was in fact filed in 2014, *Achgzai I*, 170 F. Supp. 3d at 170.

causation, the plaintiff must show that "the two events are very close in time." *Hamilton v. Geithner*, 666 F.3d 1344, 1357 (D.C. Cir. 2012) (quotation marks omitted); *see also Pueschel v. Chao*, 955 F.3d 163, 167 (D.C. Cir. 2020) ("[I]n the absence of direct evidence of retaliation such claims are generally limited to conduct occurring shortly after the employee's protected activity.") (subsequent history omitted).  Here, Plaintiff alleges no facts that would support a plausible inference of retaliation and, instead, relies solely on the sequence of events—that is, the fact that she engaged in protected activity in 2014 and was subject to purportedly adverse actions in 2017.  *See* Dkt. 21 at 3 (Am. Compl. ¶ 8); Dkt. 25-1 at 6, 10.  The roughly three-year gap between Plaintiff's protected activity and the purportedly adverse actions she suffered is too long—without *any* other factual allegation that might support such an inference—to support a plausible claim of retaliation.  *See, e.g.*, *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 274 (2001) ("Action taken . . . 20 months later suggests, by itself, no causality at all."); *Pauling v. District of Columbia*, 286 F. Supp. 3d 179, 208 (D.D.C. 2017) ("The lack of temporal proximity between the [adverse activity] and the plaintiff's protected activity—five months—is therefore insufficient to show a causal connection[.]"); *Mohmand*, 2018 WL 4705800, at *6 ("[T]he Court lacks any basis for inferring that [plaintiff] was retaliated because of any protected activity" where "nearly two years elapsed between [plaintiff's] filing of suit before this Court and the [adverse action]."); *Pueschel*, 955 F.3d at 167 ("This court . . . has often analyzed temporal proximity in terms of months—not years."); *Gustave-Schmidt v. Chao*, 360 F. Supp. 2d 105, 118–19 (D.D.C. 2004), *aff'd*, 2004 WL 2348142 (D.C. Cir. Oct. 19, 2004) (suggesting three months is the "outer limit" where a claim of causation in the retaliation context is based solely on temporal proximity).

The Court will, accordingly, dismiss Plaintiff's ADEA retaliation claim for failure adequately to allege the required causal link.

4.   *Hostile Work Environment*

Finally, although never expressly raised as such in the amended complaint, Plaintiff appears to assert a hostile work environment claim under either Title VII or the ADEA.  Dkt. 21 at 4, 8 (Am. Compl. ¶¶ 10, 28–29).  To the extent she does so, the Court will dismiss that claim as well.

As the Court has previously explained, "there is a high bar for demonstrating a hostile work environment claim."  *Mohmand*, 2018 WL 4705800, at *6 (quotation marks omitted).  That is because, to plead such a claim, "a plaintiff must show that [her] employer subjected [her] to 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  *Achagzai I*, 170 F. Supp. 3d at 183 (brackets and quotation marks omitted) (quoting *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008)).  As a result, "'even a few isolated incidents of offensive conduct do not [generally] amount to actionable harassment.'"  *Mohmand*, 2018 WL 4705800, at *6 (quoting *Stewart v. Evans*, 275 F.3d 1126, 1134 (D.C. Cir. 2002)); *accord Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 578–79 (D.C. Cir. 2013).  "This limit on hostile work environment claims avoids imposing 'a general civility code' through federal civil rights statutes and 'filter[s] out complaints attacking the ordinary tribulations of the workplace.'"  *Id.* (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 778 (1998)).

"[N]either the D.C. Circuit nor the Supreme Court has yet [to] decide[] whether 'a hostile work environment claim can be brought under the ADEA.'"  *Id.* (quoting *Ware v. Hyatt Corp.*, 80 F. Supp. 3d 218, 227 (D.D.C. 2015)).  But, "assuming it can be, 'the same standard [as

discussed above] would apply.'" *Id.* (quoting *Ware*, 80 F. Supp. 3d at 227).  That standard is context specific:  "'In determining whether an actionable hostile work environment claim exists,' the Court must . . . 'look to all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002)).  But one thing must always be true: "[t]he employer's 'conduct must be extreme,' and must be 'both objectively and subjectively offensive,' such 'that a reasonable person would find' the conduct 'hostile or abusive.'" *Id.* (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998)).

Plaintiff's allegations fall far short of this standard.  For one, Plaintiff's allegations are entirely conclusory and lacking in factual support, rendering them of little value in sustaining Plaintiff's claim.  *Iqbal*, 556 U.S. at 678.  Putting aside for a moment the allegations of discrimination and retaliation discussed above, Plaintiff repeatedly asserts that the Board created a hostile work environment but neglects to explain how.  Dkt. 21 at 4, 8 (Am. Compl. ¶¶ 10, 28–29).  So too, Plaintiff claims she was harassed, *id.* at 6–7 (Am. Compl. ¶¶ 22, 25), but she fails to recount a single statement that was uttered, a single action that was taken, or a single incident that occurred from which the Court could infer the presence of harassment.  *Id.*  These basic pleading failures foreclose Plaintiff's hostile work environment claim.  *Iqbal*, 556 U.S. at 678.

Moreover, even if the Court were to impute Plaintiff's separate allegations of discrimination and retaliation to Plaintiff's hostile work environment claim, Plaintiff's claim would still fail.  Plaintiff does not allege facts permitting a plausible inference that her "workplace [was] permeated with discriminatory intimidation, ridicule, and insult."  *Morgan*, 536 U.S. at 116 (quotation marks omitted).  Nor has Plaintiff alleged that she was subjected to

shocking conduct, such as "'physical assault,' 'sexual assault,' 'racially hostile graffiti that amounted to [a] death threat,' 'the use of several racial epithets and insults,' [or] 'a burning cross.'"  *Mohmand*, 2018 WL 4705800, at *7 (quoting *Ayissi-Etoh*, 712 F.3d at 579–80 (Kavanaugh, J., concurring)).  Rather, Plaintiff avers that a modest change in work responsibilities—translating the same languages in different directions for television instead of for radio—alongside her non-promotion to a higher pay grade, constituted such "abusive," "extreme," "insult[ing]," or "ridicul[ous]" actions as to sustain her hostile work-environment claim.  *Mohmand*, 2018 WL 4705800, at * 6–7.  For the reasons explained, however, those allegations are insufficient to state a hostile work environment claim.  *See Morgan*, 536 U.S. at 116; *Faragher*, 524 U.S. at 787–88.

## CONCLUSION

For the foregoing reasons, the Court will **GRANT** Defendant's motion to dismiss, Dkt. 24.  A separate order will issue.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  October 29, 2020